**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| JANIE SEGARS, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION   3:21-cv-342-RGJ |
| Plaintiff, | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| HUMANA, INC. | : : | **JURY TRIAL DEMANDED** |
| Defendant, | : : | |
| and | : : | |
| COTIVITI, INC. | : : | |
| Defendant. | : | |

_____/

Plaintiff Janie Segars (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      Beginning in October 2020, Humana, Inc.'s (hereafter, "Humana") vendors exposed highly sensitive and private medical records of Humana's health insurance customers to the general public.

2.      More specifically, an employee of Visionary Medical Systems, Inc. (hereafter, "Visionary"), a subcontractor of Cotiviti Holdings, Inc. (hereafter, "Cotiviti") (collectively with Visionary and Humana, "Defendants"), took the private medical information of Humana customers and posted it on a publicly-accessible Google Drive account, thus releasing this sensitive information to the public and to potential criminal actors.

3.      Humana learned of the breach in December 2020. Rather than act swiftly and responsibly to inform those affected, it sat on the information for three months.  Once Humana eventually bothered to inform Plaintiff and other affected individuals of the breach, it provided no details as to the breach, how it happened, precisely what information was exposed, who might have Plaintiff and class members' sensitive information, or what would be done going forward. Without any of this critical information, such "notice" of the breach was no notice at all.  Indeed, since Humana has decided to keep this information secret, part of the reason this lawsuit is necessary is to determine what happened so that class members may take whatever steps may be necessary to protect themselves.

4.      Humana, along with its vendors Cotiviti and Visionary, have been negligent in their handling of Plaintiff and class members' sensitive personal data, both in the breach and in the subsequent handling of the breach, and in the insufficient notice to class members.

5.      Plaintiff brings claims for negligence, invasion of privacy, and breach of implied contract on behalf of herself and the class in order to remedy the significant consequences of Defendants' conduct.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA") codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Humana because the company has its principal place of business in Louisville, Kentucky, and is thus a resident of the Commonwealth of Kentucky for purposes of personal jurisdiction.

8.      This Court has personal jurisdiction over Cotiviti because it is licensed to conduct business in the Commonwealth of Kentucky, and thus has purposefully availed itself of the laws

of the Commonwealth of Kentucky, and many of the activities giving rise to this case occurred within the Commonwealth of Kentucky.

9.      This Court has personal jurisdiction over Visionary because it is licensed to conduct business in the Commonwealth of Kentucky, and thus has purposefully availed itself of the laws of the Commonwealth of Kentucky, and many of the activities giving rise to this case occurred within the Commonwealth of Kentucky.

10.     Venue is proper in the United States District Court for the Western District of Kentucky because one of the Defendants has its principal place of business in the District, many of the events giving rise to the claims occurred in the District, and defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

## PARTIES

11.     Plaintiff Janie Segars is, and at all times mentioned herein was, an individual citizen of the State of South Carolina.

12.     Humana, Inc. is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Louisville, Kentucky.

13.     Cotiviti, Inc. is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in West Jordan, Utah.

## FACTUAL ALLEGATIONS

**Facts Related to the Data Breach**

14.     As set forth in more detail below, Plaintiff was "informed" (barely) of the data breach at issue in this litigation via Defendant Humana's communication to Plaintiff and

members of the proposed class.  *See* Exhibit A to this Complaint.  As such, Plaintiff hereby pleads on information and belief, based on Humana's representations.

15.     As a provider of health insurance services to Plaintiff and class members, Defendant Humana has access to, and regularly maintains in the ordinary course of its business, extensive medical records of its customers.

16.     The medical records maintained by Humana on behalf of its customers includes, but is not limited to, name, date of birth, address, telephone number, email address, social security number, information related to Humana's insurance coverage for the customer, a list of medical providers utilized by the customer, a record of medical treatments received by the customer, and medical images associated with the customer.

17.     The information maintained by Humana on behalf of its customers is extremely sensitive, including very private details of health history and status.  Release of this information, in addition to the "normal" and substantial risks of identity theft, is deeply invasive.

18.     It is well known that the personal and medical information of the sort maintained by Humana is a valuable commodity of criminals and a frequent target of hackers.

19.     At some point before October 2020, Humana entered into a business arrangement with Defendant Cotiviti for "quality and data reporting to Centers for Medicare and Medicaid Services (CMS)."  Exhibit A.  As part of that arrangement, "Cotiviti provides systems that allow Humana to contact health care providers and request medical records necessary to verify data reported to CMS."  *Id*.

20.     Cotiviti, in turn, contracts with Defendant Visionary "to review the collected medical records."  Exhibit A.  Visionary, by way of Cotiviti and Humana, had access to the medical records of Humana customers, including Plaintiff and class members.

21.      On October 12, 2020, an unnamed employee of Visionary uploaded the medical

records of Plaintiff and class members onto "a personal Google Drive account." Exhibit A.  This

was done "in an effort to provide medical coding training" as part of "a personal coding business

endeavor."  *Id*.

22.      Whatever the nature of this "personal business coding endeavor" (whatever that

might mean) undertaken by Visionary, it was obviously improper for the medical records of

Humana customers to be utilized without the consent of those customers.  More to the point, it

was reckless in the extreme for those medical records to be uploaded to a public website,

allowing them to be accessible to anyone who might seek to use the information contained in

those records for an improper purpose.

23.      According to Humana, the sensitive records were available on the Google Drive

account for two full months, from October 12, 2020 to December 16, 2020.

24.      On December 22, 2020, Humana says that it became aware of the exposure of the

medical records of its customers via its subcontractor Visionary.

25.      For the next two months, Humana did not inform the affected customers of the

exposure of their sensitive medical information in any way.

26.      Finally on March 1, 2021, almost *five months* after the event, Humana sent a letter

to Plaintiff and class members regarding the incident.  *See* Exhibit A.

27.      The letter Humana sent to Plaintiff and class members was deficient in several

respects.  It provides no details as to the nature of the "personal coding business endeavor"

giving rise to the breach, nor regarding the identity of the individuals who had access to the class

members' medical records.  Nor does the letter provide any explanation for why the breach went

undetected for two months, or why it took two additional months for Humana to contact its

customers and inform them of the breach.  Finally, although it gives a laundry list of the types of information that may have been exposed, it provides no specificity about what information specifically was, in fact, exposed.  Plaintiff barely knows more about the breach now that she did before she received the letter.

28.     Finally, the letter provides only the vaguest explanation of what actions Defendants have purportedly taken in order to prevent future breaches of this type.

29.     Defendants have offered no compensation or restitution for the reckless and flagrantly improper disclosure of their medical records and other personal information, other than an offer to pay for some credit monitoring services.  This remedy is completely inadequate—at most, it will inform Plaintiff and class members *when* they have suffered additional negative consequences of Defendants' reckless actions, but it does nothing to compensate class members for that harm, nor will it prevent harm from occurring.

30.     Despite widespread knowledge and industry alerts of other notable data breaches of medical records, Defendants failed to take reasonable steps to adequately protect class members' sensitive information from being exposed.  Defendants are, and at all relevant times have been, aware that the information they maintains is highly sensitive and could be used for illegal or improper purposes by third parties.

31.     As seen by the ease by which an employee of Visionary was able to load Plaintiff and class members' information to public websites, Defendants clearly failed to implement robust practices necessary to protect sensitive medical information.

32.     Defendants had a duty to Plaintiff and class members to properly secure their information, encrypt, tokenize, and maintain their information using industry standard methods, use widely available technology to defend its systems from invasion, act reasonably to prevent

- 6 -

foreseeable harm to Plaintiff and class members, promptly notify Plaintiff and class members when Defendants became aware of the potential that their customers' information may have been compromised, and to do so with specific information.  Defendants evidently did none of these things.

**Facts Related to the Plaintiff and the Class**

33.     Plaintiff is currently part of Humana's Humanachoice PPO plan.

34.     On or about March 1, 2020, Plaintiff received the letter attached to the Complaint as Exhibit A.  In information and belief, a substantially similar letter was sent to every other customer of Humana whose information was exposed by Humana and its vendors Cotiviti and Visionary.

35.     Plaintiff and class members' personal and medical information was exposed to the public for at least two months.  Therefore, she and members of the class are at great exposed risk of identity theft, the disclosure of sensitive and personal medical facts to the public, or both.

36.     Plaintiff and class members have suffered injury and damages, including an increased risk of identity theft and identity fraud, improper disclosure of their medical information, the time and expense necessary to mitigate, remediate, and sort out the identity theft and identity fraud and increased risk of identity theft and identity fraud, and a deprivation of the value of their personal information.

37.     Plaintiff and class members have suffered and will continue to suffer additional damages based on the opportunity cost and time Plaintiff and class members are forced to expend in the future to monitor their personal information and accounts as a result of the breach.

38.      The data breach was caused and enabled by Defendants' violation of their common law and statutory obligations to implement and maintain the kinds of security measures

appropriate for protecting sensitive medical information from unauthorized access, acquisition, destruction, use, and modification.

## **CLASS ACTION ALLEGATIONS**

39.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

40.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

41.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons in the United States who are or were customers of Humana, Inc., and whose medical information was placed on a Google Drive by Visionary Medical Systems, Inc. on or after October 12, 2020.

Collectively, all these persons will be referred to as "Class members."  Plaintiff represents, and is a member of, the Class.

42.     Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

43.     Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number tens of thousands of individuals.

44.     Plaintiff and class members have suffered injury and damages, including an increased risk of identity theft and identity fraud, improper disclosure of their medical information, the time and expense necessary to mitigate, remediate, and sort out the identity theft

and identity fraud and increased risk of identity theft and identity fraud, and a deprivation of the value of their personal information.

45.    This Class Action Complaint seeks injunctive relief and money damages.

46.    The joinder of all Class members is impracticable due to the size of the class and the relatively modest value of each individual claim.

47.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

48.    Further, the Class can be identified through records maintained by Defendants.

49.    There are well defined, nearly identical, questions of law and fact affecting all parties.

50.    The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

51.    Such common questions of law and fact include, but are not limited to, the following:

    a.    Whether Defendants engaged in wrongful conduct as alleged herein;

    b.    Whether Defendants owed a duty to Plaintiff and Class members to adequately protect their medical information, and whether Defendants willfully, recklessly, or negligently breached these duties;

    c.    Whether Defendants willfully, recklessly, or negligently failed to maintain and execute reasonable procedures to prevent unauthorized access to its data security networks and to Plaintiff and Class members' medical information;

    d.    Whether Defendant Cotiviti's conduct, including its failure to act, resulted in or was the cause of the release of medical records at issue;

      e.      Whether Defendant Humana's conduct, including its failure to act, resulted in or was the cause of the release of medical records at issue;

      f.      Whether Defendants continue to breach their duties to Plaintiff and Class members;

      g.      Whether Defendants are liable for damages; and

      h.      Whether Defendants should be enjoined from engaging in such conduct in the future.

52.      As someone who had her medical information exposed to the public by Defendants, Plaintiff asserts claims that are typical of each Class member.

53.      Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

54.      Plaintiff has no interests which are antagonistic to any member of the Class.

55.      Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims relating to privacy.

56.      A class action is the superior method for the fair and efficient adjudication of this controversy.

57.      Classwide relief is essential to compel the Defendants to comply with their statutory and common law obligations.

58.      The interest of the Class members in individually pursuing claims against Defendants are slight because the damages for an individual action are relatively small, and are therefore not likely to deter Defendants from engaging in the same behavior in the future.

59.      Management of these claims is likely to present few difficulties.

60.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

61.     Moreover, on information and belief, Plaintiff alleges that violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT (AS TO ALL DEFENDANTS)

## INVASION OF PRIVACY (INTRUSION ON SECLUSION)

62.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

63.     As to all tort causes of action, "Kentucky courts will apply Kentucky law so long as a party has 'any significant contacts' with the forum."   *Corder v. Ford Motor Co.*, 272 F.R.D. 205, 211 (W.D. Ky. 2011).

64.     Plaintiff and class members entered into insurance agreements with Humana, which is headquartered in the Commonwealth of Kentucky.

65.     Defendant Cotiviti entered into contractual relationships with Humana, which is headquartered in the Commonwealth of Kentucky.

66.     Defendant Humana obtained the medical records at issue in this case pursuant to its insurance relationships with Plaintiff and class members.  Defendant Humana then provided access to those records to Defendants Cotiviti and Visionary, access that resulted in the breach at issue.

67.     As such, all parties have "significant contacts" with the Commonwealth of Kentucky, via the common nexus of Defendant Humana.

68.     Under Kentucky law, a claim of intrusion upon seclusion requires "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) which is highly offensive to a reasonable person." *McKenzie v. Allconnect, Inc.,* 369 F. Supp.3d 810, 819 (E.D. Ky. 2019) (citing *Pearce v. Whitenack,* 440 S.W.3d 392, 400-01 (Ky. Ct. App. 2014)).

69.     Visionary improperly accessed the medical records and personal data of Plaintiff and class members and exposed them to the public, without consent. This was done deliberately and intentionally, pursuant to "a personal coding business endeavor."

70.     This intrusion was done as a result of Visionary's business relationship with Defendant Cotiviti, and in turn Cotiviti's business relationship with Humana. As such, all Defendants are liable and responsible for the actions of Visionary and its employees.

71.     Plaintiff and class members have a right to keep their medical records and personal data private. The information that was exposed on a publicly available website apparently included addresses, social security numbers, and account numbers, all of which can be used by identity thieves to compromise the well-being of Plaintiff and class members. In addition, parties have the right to have the deals of the medical status and procedures kept from the general public.

72.     The behavior of Defendants in this case would be highly offensive to all reasonable persons. Not only was highly sensitive information published on a publicly-available website without the consent of Plaintiff and class members, but it was done for no legitimate business reasons of behalf of customers, but instead as part of some unspecified side project.

73.     The foregoing actions of the Defendants constitute an intrusion upon the seclusion of Plaintiff and class members.

74.     Plaintiff and class members are entitled to an amount of damages to be determined at trial.

75.     Plaintiff and all class members are also entitled to and do seek injunctive relief prohibiting such conduct by the Defendants in the future

<u>**SECOND COUNT (AS TO ALL DEFENDANTS)**</u>

<u>**NEGLIGENCE**</u>

76.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

77.     As set forth more in paragraphs 66-70, Kentucky law applies to all tort claims brought by Plaintiff and class members.

78.     Plaintiff and Class members entrusted Defendants with highly sensitive and personal private data subject to confidentiality.

79.     In obtaining and storing Plaintiff's and class members' information, Defendants owed a duty of reasonable care in safeguarding this information.

80.     Defendants' networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiff's and class members' information was secured from release, disclosure, and/or publication.

81.     Defendants' networks, systems, protocols, policies, procedures and practices were not reasonable given the sensitivity of the Plaintiff's and class members' information.

82.     Upon learning of the Data Breach, Defendants should have immediately reported the data breach to Plaintiff and class members, credit reporting agencies, financial institutions, and all other third parties with a right to know and the ability to mitigate harm to Plaintiff and class members.

83.     Despite knowing their networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiff's and class members' information were secured from release, disclosure, and publication, Defendants ignored the inadequacies and were unmindful of the risk of release, disclosure, and publication they had created.

84.     Defendants' behavior evidences a reckless disregard for Plaintiff's and class members' rights. Defendants' negligence is directly linked to Plaintiff's and class members' injuries.

85.     As a result of Defendants' reckless disregard for Plaintiff's and class members' rights by failing to secure their information despite knowing their networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and class members suffered injury, including but not limited to the impermissible release, disclosure, and publication of their information, as well as exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm.

86.     The harm to Plaintiff and the class members was a proximate and reasonably foreseeable result of Defendants' breach of its duty of reasonable care in safeguarding class members' information.

87.     Plaintiff and class members are entitled to damages in an amount to be proven at trial.

## THIRD COUNT (AS TO DEFENDANT HUMANA, INC.)
## BREACH OF IMPLIED CONTRACT

88.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

89.     As to contract causes of action, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties. . . ." *State Farm Mut. Auto Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013) (quoting Restatement (Second) Conflict of Laws § 188(1) (1971)).

90.     "Among the factors a court making that determination should consider are the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties." *Id.* at 878-79 (citing Restatement § 188(2)).

91.     When Plaintiff and class members entered into insurance relationships with Defendant Humana, and thus provided their medical records and other sensitive information to Humana, they entered into implied contracts by which Humana agreed to protect the information provided to them.

92.     Plaintiff and class members certainly would not have provided their medical records and other sensitive information to Humana if they knew Humana and/or its vendors would not safeguard their information as promised.

93.     Kentucky has the most significant relationship to this transaction, as the location of performance was at the location where a reasonable person would believe the information to be maintained—Defendant Humana's headquarters in Louisville, Kentucky.

94.     Humana violated the contracts by failing to employ reasonable and adequate privacy practices and measures, leading to the disclosure of Plaintiff's and class members' information for purposes not required or permitted under the insurance relationship.

95.     Plaintiff and class members have been damaged by Defendant Humana's conduct by incurring the harms and injuries arising from the data breach now and in the future, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all class members the following relief:

A.     Injunctive relief prohibiting such violations by the Defendants in the future;

B.     Awarding monetary and actual damages and/or restitution, as appropriate;

C.     Awarding punitive damages, as appropriate;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.     Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated: May 26th, 2021

By: */s/ Penny Unkraut Hendy*
Penny Unkraut Hendy (83676)
Ronald E. Johnson, Jr. (88302)
HENDY JOHNSON VAUGHN EMERY P.S.C.
Email:  phendy@justicestartshere.com
Email:  rjohnson@justicestartshere.com
909 Wright Summit Parkway, Suite 210
Ft. Wright, KY 41011
Telephone: (859) 578-4444
Facsimile:  (859) 578-4440

MEYER WILSON CO., LPA
Matthew R. Wilson
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr.
Email:  mboyle@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

DAVE MAXFIELD, ATTORNEY, LLC
Dave Maxfield
P.O. Box 11865
Columbia, SC 29211
Phone: 803-509-6800
Fax: 855-299-1656
Email: dave@consumerlawsc.com


*Attorneys for Plaintiff and the Proposed Class*